*Decision will be entered under Rule 50.*

ROBERT GAGE COAL COMPANY, TRANSFEREE OF THE ASSETS OF MONITOR SUGAR COMPANY (DISSOLVED), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROBERT GAGE COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 110556, 110557. Promulgated July 31, 1943.

---

*Edward S. Clark, Jr., Esq.*, for the petitioner.
*John H Pigg, Esq.*, for the respondent.

490

OPINION.

BLACK, *Judge:* The first issue is to determine how much of the admitted net income of $354,370.58 from the sugar business conducted by Monitor for the first six months and by petitioner for the last six months of the fiscal year ended March 31, 1937, is taxable to Monitor and petitioner, respectively. This is essentially a question of fact.

Petitioner, as owner of all the stock of Monitor, completely liquidated the latter on September 30, 1936. The books of Monitor were not closed at the time of the liquidation, nor were any inventories taken. The business taken over by petitioner was a seasonal business and the liquidation occurred in the midst of the season, when it would have been very difficult to take inventories and to close the books. In filing their returns each corporation reported one-half of the income, which action was explained in an exhibit which was attached to petitioner's return and has been made a part of our findings.

The respondent accepted this method of allocation as far as Monitor was concerned, but in the case of the parent company he determined that the entire income of $354,370.58 was attributable to the assets received in the liquidation of Monitor for the period October 1, 1936, to March 31, 1937. As the determinations stand, the respondent would tax $531,555.87 of income where only $354,370.58 was earned.

The respondent contends that the *prima facie* correctness of his factual determination in the case of the parent company (Docket No. 110557) has not been overcome by competent evidence and that we should, therefore, hold that he did not err in his determination that the entire net income of $354,370.58 is taxable to the parent company. If this contention is sustained, the respondent argues in his brief that "it follows that he, the respondent, erred in his failure to eliminate from the net income as reported by the Monitor Sugar Company for that fiscal year, the amount of $177,185.29, representing the one-half of the aforesaid income of $354,370.58, as reported by Monitor."

Petitioner contends that the respondent's determination in the transferee liability proceeding (Docket No. 110556) that 50 percent of the income from the sugar business is taxable to Monitor should be approved, since it was not contested and was the way in which the income was originally reported. Petitioner also contends that it is impossible here to determine exactly how much of the admitted income was earned by Monitor and how much was earned by the parent company, and that, therefore, the income for the twelve months period

should, as a matter of law, be allocated between the two companies on a time basis, citing *Carl Lang*, 3 B. T. A. 417; *Lang* v. *United States*, 23 A. F. T. R. 1254; *Peter W. Rouss*, 4 B. T. A. 516; *Rouss* v. *Bowers*, 30 Fed. (2d) 628; certiorari denied, 279 U. S. 853; *C. C. Coddington*, 10 B. T. A. 712; *Maurice L. Stern*, 11 B. T. A. 1309; *Continental Oil Co.*, 34 B. T. A. 29; affd., 100 Fed. (2d) 101.

The above cases stand for the proposition that allocation on a time basis may be employed as a means of last resort where it is impossible to determine the correct net income of a taxpayer for a given period in any other way. The end sought is the determination of a taxpayer's net income for a given period on an as nearly accurate a basis as is possible under all the circumtances. Cf. *Reynolds* v. *Cooper*, 64 Fed. (2d) 644.

In the latter case the court, among other things, said:

* * * The Commissioner apportioned the 1923 income between the two taxpayers according to the number of days included in each of the periods in question. The propriety of such method of apportionment if the Commissioner is unable to determine the actual income received by each of the taxpayers, is not questioned. On the other hand, the Commissioner should assess the income actually received by each of the taxpayers if it can be ascertained. Rules of thumb should only be resorted to in case of necessity, for the actual is always preferable to the theoretical. [Citing cases.]

In the instant proceedings petitioner introduced in evidence as one exhibit three financial statements of Monitor for the first six months of the fiscal year in question. These statements consisted of a profit and loss statement, a balance sheet as of September 30, 1936, and an analysis of surplus as of the begining and end of the six-month period. A balance sheet as of March 31, 1936, is in evidence as a part of Monitor's return. These statements were all prepared by R. W. Rannie, a certified public accountant, who had audited the books of both petitioner and Monitor for several years prior to the taxable year in question. A brief summary of the profit and loss statement set forth in our findings shows a net income of $56,488.56 for Monitor for the first six months from the sugar business. Monitor had no other business. Rannie testified that these figures were all real figures taken from the books pertaining to the sugar business and that the result reached, although not 100 percent accurate, was as nearly so as he thought possible. On this point he testified, as to the schedules which he had prepared, as follows: "Substantially correct. I wouldn't say that they were correct right to the dollar, but they are substantially correct." The schedules were introduced in evidence for the purpose of showing the unquestioned incorrectness of the respondent's determination in Docket No. 110557 that the entire income of $354,370.58 was earned by the parent company in the last six months of the fiscal year. In offering the schedules petitioner announced that it did not

intend to depart from its original position in Docket No. 110556 and the respondent's determination therein that one-half of the admitted income should be allocated to Monitor. Petitioner still insists on that position, with the argument that since the $56,488.56 of net income shown in these schedules is not and can not be entirely accurate, allocation on a time basis should be resorted to as a matter of law.

As we have already stated, in determining the net income of a taxpayer for a given period the method that should be used is the one that will produce the most accurate result. As the court said in *Reynolds* v. *Cooper*, *supra*, "Rules of thumb should only be resorted to in case of necessity, for the actual is always preferable to the theoretical." The schedules placed in evidence by petitioner unquestionably prove that the respondent's determination in Docket No. 110557 is erroneous. But we think that the schedules also prove that the respondent's determination and Monitor's treatment of the matter in Docket No. 110556 is equally erroneous. For the entire period there were gross sales less returns and allowances of $2,273,262.93. The record does not show how much of this represented gross sales of seed and fertilizer. The profit and loss statement of Monitor prepared by the witness Rannie and offered in evidence by petitioner shows that for the first six months of the period there were gross sales less returns and allowances (except seed and fertilizer sales) of only $479,704.96; that there was a profit on seed sales of $9,224.80; and that there was a profit on fertilizer sales of $4,118.98. We think these figures clearly show that the great bulk of sales took place in the period from October 1, 1936, to March 31, 1937, and that it would be erroneous to allocate one-half of the resulting net income to each six-month period when there are in evidence figures which are much more accurate than an allocation on a time basis would produce.

We are of the opinion and have found as an ultimate fact that of the $354,370.58 of net income from the sugar business for the fiscal year ended March 31, 1937, $56,488.56 is taxable as Monitor's net income, and the balance or $297,882.02 is taxable as the net income of petitioner in its separate corporate capacity. We, therefore, hold that the respondent erred in determining that Monitor was taxable on $177,185.29 and petitioner on $354,370.58. The amounts of $56,488.56 and $297,882.02 should be substituted for the amounts determined by the respondent.

The second issue in Docket No. 110557 was raised by the respondent by an amendment to his answer. It requires no citation of authorities to support the proposition that the burden of proof is on respondent to sustain the affirmative allegations in his amended answer.

The facts, however, with reference to the liquidation of Monitor are fully in evidence. Monitor's corporation income and excess profits tax

return for the fiscal year ended March 31, 1937, was introduced in evidence by respondent. It contains detailed information concerning the liquidation of Monitor. This information shows that petitioner, the sole stockholder of Columbia Operating Co., which was in turn the sole stockholder of Monitor, had on September 22, 1936, definitely determined to liquidate both corporations. Columbia Operating Co. was first liquidated and on September 24, 1936. Monitor declared and paid the $140,000 cash dividend in question. While the cash dividend of $140.000 was actually paid a few days prior to the formal liquidation of Monitor, which took place September 30, 1936, nevertheless we think that, when all the circumstances are considered, we must hold that the distribution of the $140,000 was a liquidating dividend. *Canal-Commercial Trust & Saving Bank*, 22 B. T. A. 541; affd., 63 Fed. (2d) 619; *Texas-Empire Pipe Line Co.*, 42 B. T. A. 368; affd., on this point 127 Fed. (2d) 220. The court said in the latter case:

* * * The distribution of November 30, 1932. was not made in the ordinary course of business with intent to maintain the subsidiary as a going concern, but was paid after it had been decided to liquidate the subsidiary and was declared only one day prior to the formal action taken to effect distribution in liquidation. * * *

As shown in our findings, in its income tax return for the taxable year in question petitioner reported the $140.000 received from Monitor as an ordinary dividend and took credit for 85 per centum thereof under section 26 of the Revenue Act of 1936. This section reads in part as follows:

SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

* * * * * * *

(b) DIVIDENDS RECEIVED.—85 per centum of the amount received as dividends from a domestic corporation which is subject to taxation under this title. * * *

It seems plain that the dividends referred to in the foregoing section are ordinary dividends and not liquidating dividends. Therefore. having held that the $140,000 dividend in question was a liquidating dividend, we sustain respondent's contention that the $119,000 dividends received credit taken by petitioner in its return should be disallowed.

This now brings us to petitioner's contention made in its reply to respondent's amended answer, wherein petitioner alleges:

If the said dividend of $140,000.00 is held and determined to be a liquidating dividend, the payment of said sum by the Monitor Sugar Company to Petitioner was an integral part of the tax-free liquidation of Monitor Sugar Company under Article 112 (b) (6) of the Revenue Act of 1936, and Petitioner is entitled to a refund for the sum paid by it on the fifteen per cent thereof ($21,000.00).

Section 112 (b) (6), Revenue Act of 1936, to which petitioner refers in the above reads, in part, as follows:

(6) PROPERTY RECEIVED BY CORPORATION ON COMPLETE LIQUIDATION OF ANOTHER.— No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. * · * *

Prior to the 1936 Act the liquidation of a subsidiary corporation was a transaction on which gain or loss was recognized. But under the 1936 Act, which is applicable here, such a liquidation is free from the recognition of gain or loss if it meets the conditions laid down in the statute. See Mertens Law of Federal Income Taxation, vol. 1, sec. 9.86. Cf. *Helvering* v. *Credit Alliance Corporation*, *supra*.

The liquidation by petitioner of its wholly owned subsidiary, Monitor, appears to meet all the requirements of the statute to exempt such liquidation from the recognition of gain or loss. Therefore, no gain is to be recognized to petition in the distribution to it by Monitor of the liquidating dividend of $140,000. This distribution was simply a part of the distribution of the entire assets of Monitor to petitioner, and no gain or loss is to be recognized on any of it. under the statute which we have quoted. This being true, petitioner erred in reporting the $140,000 liquidating dividend as a part of its taxable income, and, as we have already stated, petitioner also erred in taking as a dividends received credit 85 per centum of such distribution of $140,000. In a recomputation under Rule 50 both cf these items should be eliminated.

*Decision will be entered under Rule 50.*